IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


ROBERT HAYES,

     Plaintiff,

vs.                                   Case No. 4:10cv541-MP/CAS

SECRETARY, FLORIDA DEPARTMENT
OF CHILDREN AND FAMILIES,

     Defendant.

_____/


## REPORT AND RECOMMENDATION

       Plaintiff, proceeding *pro se*, filed a second amended complaint, doc. 16, and after the Defendant waived service of process, doc. 19, a motion to dismiss was filed on October 10, 2011.  Doc. 21.  Defendant contends "the complaint fails to state a claim upon which relief can be granted."  Doc. 21.  Plaintiff was provided an opportunity to file a response, doc. 22, and Plaintiff's response was timely filed.  Doc. 22.

**Standard of Review**

       The issue on whether a complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009), *quoting* Twombly, 550 U.S. at 570, 127 S.Ct. 1955.[1]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949, *citing* Twombly, 550 at 556; *see also* Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 556.  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 557.

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").  *Pro se* complaints are held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), *citing* Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).  Nevertheless, a complaint must provide sufficient notice of the

---

[1] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), *quoted in* Twombly, 127 S.Ct. at 1966.  A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S.Ct. at 1964-65.  In determining whether the complaint states a claim upon which relief may be granted, the court accepts all the factual allegations in the complaint as true and evaluates all inferences derived from those facts in the light most favorable to the plaintiff.  Hunnings v. Texaco, Inc., 29 F.3d 1480,1483 (11th Cir. 1994).

**Allegations of the Second Amended Complaint, doc. 16**

Plaintiff alleges that the Florida Civil Commitment Center (hereinafter "FCCC") operates under the jurisdiction of the Florida Department of Children and Families (hereinafter "DCF"), and under contractual agreement with the Geo Group, Inc. (hereinafter "Geo").  *Id.*, at 2.  Plaintiff alleges that pursuant to the Jimmy Ryce Act (FLA. STAT. § 394.910-932), the Florida Legislature did not "include a provision allowing DCF to promulgate rules for the operation of the FCCC pursuant to" FLA. STAT. § 120.54.  *Id.*  Plaintiff claims that because there are no rules governing the FCCC, residents like Plaintiff are subject to punishment without notice and to the "arbitrary and capricious" decisions of Geo employees.  *Id.*, at 2-4.  Plaintiff claims that "[e]very employee of Geo is in effect his or her own rulemaking authority.  *Id.*, at 4.  Plaintiff

claims that the lack of promulgated rules[2] violates his due process rights as guaranteed by the Fourteenth Amendment.  *Id.*, at 5.  As relief, Plaintiff seeks a declaratory judgment that FLA. STAT. § 394.910-3.94.931 be declared unconstitutional.  *Id.*

**Motion to Dismiss, doc. 21**

Defendant argues that the complaint should be dismissed because the Fourteenth Amendment "does not require the Department to promulgate administrative rules governing FCCC's operation."  *Id.*, at 2.  Defendant contends the "only alleged wrong is the absence of administrative rules" and claims the "promulgation of administrative rules applicable to FCCC is purely a state law issue that cannot be adjudicated in this proceeding."  *Id.*

**Analysis**

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives "any person of life, liberty, or property, without due process of law ."  U.S. CONST. amend. XIV.  To allege a violation of one's due process rights, a plaintiff must establish that he was deprived of an interest cognizable under the Due Process Clause, and that the procedures attendant upon that deprivation were not constitutionally sufficient.  Kentucky v. Dep't of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506. 459-60, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); Board of Regents v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "Due process entitles an individual to notice and some form of hearing before state

---

[2] Florida Statute 394.930 grants authority to DCF to adopt rules for six reasons. None of the asserted reasons concerns rules which are related to the rights of residents, conduct of residents, or disciplinary procedures and punishment.  *Cf.* FLA. STAT. § 944.09 (statute granting Department of Corrections authority to adopt rules).

action may finally deprive him or her of a property interest" or liberty interest.  Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994), *citing* Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 901-902, 47 L.Ed.2d 18 (1976).  Plaintiff alleged he was deprived of property and his liberty without due process of law because "[t]here are no rules under the [Florida Administrative Code] concerning" the various reasons in which Plaintiff was disciplined.  Doc. 16, at 2-4.

Defendant claims that by seeking a declaratory judgment, Plaintiff is "in effect, pursuing habeas relief, not section 1983 relief."  Doc. 21, at 4.  That argument is rejected.  Plaintiff is not requesting release from his commitment, and granting declaratory judgment would not entitled Plaintiff to release.  Such a judgment would not alter the legality of Plaintiff's custody, only the conditions under which Plaintiff would be held in custody.

Defendant also claims Plaintiff improperly named the Secretary[3] of the Department of Children and Families as the Defendant, because Plaintiff failed to allege conduct by the Secretary that violated the Fourteenth Amendment.  Doc. 21, at 3.  This action, however, does not present an individual capacity claim against the Secretary, but an official capacity claim.  The complaint could not name the Department itself because as a state agency, it would be immune from suit under the Eleventh Amendment as Congress did not abrogate Eleventh Amendment immunity in § 1983

---

[3] Plaintiff initially named the State of Florida as the Defendant in this case in his amended complaint, doc. 8.  Service was refused by the Governor and the Florida Attorney General.  Docs. 13, 14.  Thus, because Plaintiff alleged that the FCCC operated under the jurisdiction of DCF, he was directed in a Court Order to name the Secretary of the Department as the Defendant.  Doc. 15, *citing* Myers v. Florida Civil Commitment Center, 953 So. 2d 726, 727 (Fla. 1st DCA 2007).

cases, nor has Florida consented to being sued or waived this Eleventh Amendment immunity.  Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990); Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1515-16 (11th Cir. 1986).  While the Eleventh Amendment bars suits against a state agency, it does not generally prohibit suits which seek only prospective injunctive or declaratory relief for ongoing constitutional violations against an official acting in his official capacity.  Florida Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dept. of Health & Rehab. Servs., 225 F.3d 1208, 1220 (11th Cir. 2000) (noting that "the Eleventh Amendment does not generally prohibit suits against state officials in federal court seeking only prospective injunctive or declaratory relief, but bars suits seeking retrospective relief such as restitution or damages."); Summit Medical Assocs. P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999) (citing doctrine asserted in Ex parte Young 209 U.S. 123, 28 S.Ct 441, 52 L.Ed. 714 (1908)); Burnette v. Carothers, 192 F.3d 52, 57, n.3 (2d Cir. 1999).  The *ex parte Young* exception does not apply to a suit against a state agency itself.  Camm v. Scott, 2011 WL 6005285, at *4 (M.D.Fla. 2011), *citing* Eubank v. Leslie, 210 Fed.Appx. 837, 844 (11th Cir. 2006) (stating that "[s]tate agencies, however, are never subject to unconsented suit, even under the doctrine of *Ex parte Young*."); *see also* Sessions v. Rusk State Hosp., 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981)[4] (noting that "neither the state nor its agencies may be sued for injunctive relief in federal court, although injunctive or prospective relief may be sought against state officials without invoking the Eleventh Amendment bar.").  In his response to the motion to dismiss, Plaintiff

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former "Fifth Circuit as that court existed on September 30, 1981."

specifically contends that his complaint seeks "prospective relief only, i.e., that the statutory scheme which plaintiff is detained under be found unconstitutional."  Doc. 23 at 2.  Because Plaintiff seeks declaratory relief against the Secretary of DCF, dismissal is not warranted.

Defendant also claims that Plaintiff cannot prevail in this case because "FCCC can impose restrictions on residents' rights and privileges without violating residents' due process rights."  Doc. 21, at 4.  In support, Defendant cites to Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452 (1982), and argues that the Fourteenth Amendment does not require "the Department to adopt FCCC's operating policies as administrative rules through Florida's Administrative Procedures Act."  Id., at 5.

In Youngberg, the Court considered "for the first time the substantive rights of involuntarily committed mentally retarded persons under the Fourteenth Amendment to the Constitution."  Youngberg, 457 U.S. at 314, 102 S.Ct. at 2457.  The petitioner, Romeo, sought training for those persons institutionalized by the State.  The Court concluded that civil commitment does not extinguish liberty interests such as a right to freedom from bodily restraint, and the right to be housed in safe conditions, although the rights are not absolute.  Id., at 315-316, 320, 102 S.Ct. at 2458, 2460.  Nevertheless, an individual's liberty interests must be weighed against the State's legitimate interests. Id., at 321, 102 S.Ct. at 2461.  The Youngberg Court held that Romeo had "constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests."  Id., at 324, 102 S.Ct. at 2462.  In reaching that conclusion, the Court did conclude that in balancing those interests, courts must show deference to the

judgment exercised by qualified professionals who should determine what training was reasonable.  *Id.*

Youngberg stands for "the general legal principle that persons who are involuntarily committed to state mental institutions have a right to safe conditions, freedom from bodily restraint, and a right to minimal training."  *See* Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994) (*explaining* Youngberg and granting qualified immunity in claim against Alabama Department of Mental Health and Retardation for failure to provide adequate security).  It does not alter the proposition that a civilly committed person has due process rights which require prior notice, or "fair warning," of proscribed conduct before a sanction may be imposed.  Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972).

In Grayned, the Supreme Court explained why a "vague" law offends the basic principle of due process:

> Vague laws offend several important values.  First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.  Vague laws may trap the innocent by not providing fair warning.  Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.  A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

Grayned, 408 U.S. at 108-109, 92 S.Ct. at 2298-2299.  This is not a case challenging a rule that is merely vague; rather, Plaintiff contends that no rules have been lawfully promulgated and, consequently, residents are subject to the whim of Geo officials who impose arbitrary punishment without notice.  Plaintiff's due process rights require that he

receive prior notice, or "fair warning," that his conduct violates a rule before officials of FCCC can confiscate Plaintiff's property or punish him in some material way.

In a similar context, many courts have held that before a prisoner can be charged with violating prison regulations, the prisoner must have notice of those regulations to comport with due process.  *See*, e.g., <u>Reeves v. Pettcox</u>, 19 F.3d 1061 (5th Cir. 1994) (holding that prison inmate was "entitled to a fair warning, or fair opportunity to know, that his conduct was prohibited before being punished for that conduct, and the facts show that he did not have that opportunity."); <u>Williams v. Nix</u>, 1 F.3d 712,716 (8th Cir. 1993) (stating "[i]t is axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed."); <u>Forbes v. Trigg</u>, 976 F.2d 308, 314 (7th Cir. 1992) (finding that "[d]ue process requires that inmates receive fair notice of a rule before they can be sanctioned for its violation."), *citing* <u>Coffman v. Trickey</u>, 884 F.2d 1057 (8th Cir. 1989) (inmate punished for knowing violation of published rule when no rule existed), *cert. denied*, 110 S.Ct. 1523 (1990); <u>Frazier v. Coughlin</u>, 850 F.2d 129, 130 (2nd Cir. 1988) (noting that if prisoner could "prove that he lacked notice of the rules" of which he was charged with violating, "he may have a valid [due process] claim"); <u>Robles v. Coughlin</u>, 725 F.2d 12, 16 (2nd Cir. 1983)(concluding that *sua sponte* dismissal was not warranted and directing consideration "be accorded those cases which hold that the failure to provide notice of prison rules to inmates is a violation of due process."); <u>Landman v. Royster</u>, 333 F.Supp. 621, 654-656 (E.D.Va. 1971) (prisoners have due process right to "reasonable specificity-fair waning" of rules so "that one may conform to the rules" and "to be free from arbitrary sanctions."); <u>Monteleone v. Palmer</u>, 2009 WL 3067069, at *5, n.2 (N.D.Fla. 2009).  It necessarily follows that if

prisoners are entitled to notice prior to the imposition of punishment, then the due

process rights of civilly committed persons are also violated when punishment is

imposed "for conduct no [resident] could have known was against [the] rules." Adams

v. Gunnell, 729 F.2d 362, 369-70 (5th Cir. 1984).

Plaintiff has been at FCCC for approximately twelve years pursuant to the Jimmy

Ryce Act.[5]  Plaintiff alleges that officials at FCCC engage in arbitrary and capricious

conduct in announcing rules for which the residents have no advance knowledge.  Doc.

16.  Plaintiff alleges the resident population "never know[s] what the rules are from day

to day." Id., at 5.  Plaintiffs alleges that the "lack of rules promulgated pursuant to

Florida law at FCCC violates" his rights under the Due Process Clause.[6]  Id.  That is

sufficient to state a claim,[7] and with the examples of injury Plaintiff cites in the second

---

[5]  Under the Jimmy Ryce Act, "individuals determined to be sexually violent
predators would be involuntarily committed to the custody of DCF and housed in
a secure facility 'for control, care, and treatment until such time as the person's mental
abnormality or personality disorder has so changed that it is safe for the person to be at
large.' " § 394.917(2), Fla. Stat. (2002), quoted in Morel v. Wilkins, — So.3d —, 2012
WL 739209, at *5 (Fla. 2012).  "Although confinement is based upon a criminal
conviction for a sexually violent offense, the Act creates a system of civil, not criminal,
detention." Morel, 2012 WL 739209, at *5  (Fla. 2012), citing Mitchell v. State, 911
So.2d 1211, 1215 (Fla. 2005) (other citations omitted). The Act "authorizes DCF to
contract with a private entity for the use and operation of such a facility." Morel, 2012
WL 739209, at *5, citing § 394.9151, Fla. Stat. (2002).

[6]  In Myers v. Florida Civil Commitment Center, 953 So.2d 726, 727 (Fla. 1st
DCA 2007), the court found that plaintiff presented a prima facie claim when he alleged
that "policy F-24 is a de facto agency rule that has not been adopted under the proper
rulemaking procedures of section 120.54(1)(a)" of the Florida statutes.

[7] Analysis as to whether the second amended complaint sufficiently states a
claim was considered without regard to the specific relief requested by Plaintiff.  This
Court has a duty to liberally construe the allegations of a pro se litigant, "however
inartfully pleaded," and if sufficient to support a claim, the plaintiff should be "entitled to
an opportunity to offer proof." Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594,
595-596 (1972).  No argument was presented by Defendant as to whether Plaintiff

amended complaint, Plaintiff has shown "how the absence of administrative rules" violates his due process rights, contrary to Defendant's argument.  Doc. 21, at 4.  The motion to dismiss for failure to state a claim should be denied.

**Recommendation**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to dismiss, doc. 21, be **DENIED**, that Defendant be directed to file an answer to Plaintiff's second amended complaint, and this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on May 11, 2012.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

would be entitled to the specific relief requested (declaring the Statute unconstitutional) even *if* Plaintiff were successful in this case.  Thus, that issue has not been addressed.